## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Dario Bonga, Wesley Tibbetts,                    Case No. 20-cv-1200 (WMW/LIB)
Robert Boettcher, Arthur Vanwert,

                    Plaintiffs,

                                                 **REPORT AND RECOMMENDATION**

v.

Tracy Beltz,

                    Defendant.

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendant's Motion for Summary Judgment. [Docket No. 25]. After conducting a hearing on the present Motion, the undersigned took Defendant's Motion for Summary Judgment under advisement on March 8, 2022. [Docket No. 33].

For the reasons discussed herein, Defendant's Motion for Summary Judgment, [Docket No. 25], is **GRANTED**.

## I.    Procedural History

On May 18, 2020, thirteen prisoners incarcerated at the Minnesota Correctional Facility in Faribault, Minnesota ("MCF-Faribault"), who participated in Native American religious practices, initiated this case by filing their Complaint in this Court—Kristopher Roybal, Dario Bonga, Wesley Tibbetts, Chavez Wind, Warren Skinaway, Brian Bloom, Robert Boettcher, Arthur Vanwert, Joseph Tipton, Barris Guy, Zach Clark, Chris Clark, and John Vondal, Jr. ("Plaintiffs"). (Compl., [Docket No. 1], at 2). The Complaint sought to also include generically other "Native Americans confined at M.C.F.-Faribault." (Id. at p. 1). Plaintiffs initially brought individual

lawsuits pro se against Commissioner of Corrections Paul Schnell alleging that decisions and policies of MCF-Faribault staff had interfered with their abilities to practice their religion, thus allegedly violating the United States Constitution, as well as, federal law.  (See, e.g., Id. at pp. 1-5).[1]

Specifically, Plaintiffs alleged that MCI-Faribault implemented a system limiting sweat lodge ceremonies to every other Sunday because of the expense in obtaining ceremonial wood. (Complaint, [Docket No. 1], at pp. 3-4).  Native American inmates attending the pipe, smudge, and sweat lodge ceremonies were also split based on their living unit.  (Id. at p. 4).  Plaintiffs alleged that the Chaplain at MCF-Faribault agreed to, once again, allow weekly sweat lodge ceremonies if the inmates supplied the funds to purchase ceremonial wood each week, which the Native American inmates began doing.  (Id.).  Plaintiffs then alleged that the facility held a feast on or about February 2020, which also included a sweat lodge ceremony.  (Id.). The Native American inmates were allowed to attend both ceremonies, but for the first time, they were required to pay five dollars in order attend.  (Id.).  The feast was purportedly conducted without any disturbances or incidents.  (Complaint, [Docket No. 1], at p. 4).  However, notwithstanding their financial contribution to purchase weekly ceremonial wood and the lack of disturbances during the earlier feast, Plaintiffs alleged that MCI-Faribault continued to limit Native American inmates to sweat lodge ceremonies every other week, citing security concerns.  (Id. at pp. 4-5).

As relief, Plaintiffs sought an Order of this Court requiring Defendant "to conduct a review and allow the Native American population an opportunity to exercise their sweat lodge ceremony as a whole" group, and an Order further requiring Defendant to "follow their [sic] own policy

---

[1] Plaintiffs, however, all signed a single, initial pro se complaint.

which requires a complete thorough evaluation of this particular ceremony practice and eventually allow the pipe and smudge ceremony to resume as a whole . . . ." (Id. at p. 2).

On September 14, 2020, the undersigned issued a Report and Recommendation dismissing, without prejudice, twelve prisoners—Dario Bonga, Wesley Tibbetts, Chavez Wind, Warren Skinaway, Brian Bloom, Robert Boettcher, Arthur Vanwert, Joseph Tipton, Barris Guy, Zach Clark, Chris Clark, and John Vondal, Jr.—as well as, "the Native Americans confined at M.C.F.-Faribault." [Docket No. 4, at pp. 6-7. In doing so, the undersigned held that, because all Plaintiffs were each bringing a single, personal claim, there were serious practical concerns proceeding with all thirteen Plaintiffs (i.e., signing each filing, seeking IFP status, the payment of filing fees, and potential conflicts between Plaintiffs). (Id. at pp. 3-6. On January 25, 2021, the Report and Recommendation was subsequently adopted, in part, and rejected, in part, by the Honorable Wilhelmina M. Wright, [Docket No. 8, at p. 3], and the case proceeded with all thirteen Plaintiffs, including "the Native Americans confined at M.C.F.-Faribault." (Id. at p. 5). Thereafter, on February 10, 2021, the case was stayed to allow Plaintiffs time to obtain representation through the "FBA Pro Se Project." [Docket Nos. 9-10].

On September 7, 2021, through their pro bono counsel, the operative Amended Complaint was filed by the only remaining named plaintiffs—Dario Bonga, Wesley Tibbetts, Robert Boettcher, and Arthur Vanwert (the "remaining Plaintiffs"). Former Plaintiffs Kristopher Roybal, Chavez Wind, Warren Skinaway, Brian Bloom, Joseph Tipton, Barris Guy, Zach Clark, Chris Clark, and John Vondal, Jr., were removed from the case because they were no longer being held at MCF-Faribault and could not be contacted by pro bono counsel. [Docket No. 19, at p. 1]. The Amended Complaint substituted MCF-Faribault Warden Tracy Beltz as defendant for Commissioner Schnell. (Id. at p. 2).

As relevant to the present motion, the remaining Plaintiffs allege in the Amended Complaint that Defendant had previously allowed them to practice weekly sweat lodge, smudge, and pipe ceremonies,[2] with the cost of items necessary for these ceremonies—firewood, rocks, tobacco, cedar, and sage—being the responsibility of the remaining Plaintiffs and other Native American inmates.  (Amended Complaint, [Docket No. 15], at ¶¶ 15, 23).  But the remaining Plaintiffs allege that, after a physical altercation between two participants in February 2019, MCF-Faribault ended all ceremonies for ninety (90) days.  (Id. at ¶ 26).  Thereafter, ceremonies were only allowed to be performed on the first and third Sundays of each month or every other week. (Id.).  However, there have been no ceremonies since February 2020, and ceremonies have since been banned.  (Id.).

The remaining Plaintiffs submit that it is unclear whether the sweat lodge ceremony ban was instituted due to safety measures following the COVID-19 pandemic or ostensibly due to the February 2019 physical altercation.  (Amended Complaint, [Docket No. 15], at ¶ 27). Nevertheless, the remaining Plaintiffs allege that Defendant has not similarly limited attendance of ceremonies and meetings of other religious groups and has allowed other religious group meetings to resume subject to COVID-19-related restrictions.  (Id. at ¶ 29).  The remaining Plaintiffs also allege that other religious groups at MCF-Faribault have not been banned from meeting or conducting religious service for over a year after any physical altercation may have occurred.  (Id. at ¶ 30).  Further, Minnesota correctional facilities other than MCF-Faribault are permitting and facilitating sweat lodge and related ceremonies.  (Id. at ¶ 32).

---

[2] Plaintiff Bonga served as a pipe carrier for all ceremonies; Plaintiff VanWert served as a firekeeper for sweat lodge ceremonies; Plaintiff Tibbetts served as firekeeper, drummer, and signer for all ceremonies; and Plaintiff Boetcher served as firekeeper for all ceremonies.  (Amended Complaint, [Docket No. 15], at ¶ 16).

Lastly, the remaining Plaintiffs allege that some of them have pursued administrative remedies available within MCF-Faribault by submitting written grievances and appealing denied grievances to reinstate sweat lodge and related ceremonies.  (Id. at ¶ 31).

Based on those allegations, the remaining Plaintiffs assert a violation of their rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") pursuant to 42 U.S.C. § 2000cc et seq; and a §1983 violation of their rights under the First Amendment.  (Id. at ¶¶ 33-44).

Soon after answering the Amended Complaint, Defendant sought permission to file an early motion for summary judgment, which permission was subsequently granted.  [Docket Nos. 20, 22, 23].

On January 24, 2022, Defendant filed her summary judgment motion.  [Docket No. 25]. Defendant argues that this action must be dismissed because the remaining Plaintiffs all failed to exhaust their administrative remedies as required by the Prison Litigation Reform Act.  [Docket No. 26].  In support of her motion, Defendant submitted her memorandum; and an affidavit from MCF-Faribault's Grievance Coordinator, which includes as attachments "kite" forms submitted by remaining Plaintiff Bonga.  [Docket No. 27].  In opposition, the remaining Plaintiffs assert that, because a former plaintiff in this action did exhaust his administrative remedies, requiring the remaining Plaintiffs to now file and appeal duplicate grievances is unnecessary and would be futile. [Docket No. 30].  In support, the remaining Plaintiffs submitted their memorandum; and the affidavit of counsel, Karl Cambronne, which includes as attachments a former plaintiff's filed "kite" forms, grievances, and subsequent appeals, as well as, remaining Plaintiff Boettcher's "kite" forms.  [Docket No. 31].

## II.    Defendants' Motion for Summary Judgment. [Docket No. 25].

As noted, Defendant moves this Court for an Order dismissing all of the remaining Plaintiffs' claims as alleged against her on the grounds that the remaining Plaintiffs failed to exhaust their administrative remedies as required by the Prison Litigation Reform Act.

### A.  Standard of Review

Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). As the Eight Circuit Court of Appeals has explained:

> Summary judgment should be granted if the evidence, viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. A party opposing summary judgment may not rest upon mere allegations or denials contained in the pleadings, but must, by sworn affidavits and other evidence, set forth specific facts showing that there is a genuine issue for trial.

Mehrkens v. Blank, 556 F.3d 865, 868–69 (8th Cir. 2009) (citations omitted). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).

Nevertheless:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party does so, the nonmoving

party must "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. A

disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is

"genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving

party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, "[w]here the moving

party fails to satisfy its burden to show initially the absence of a genuine issue concerning any

material fact, summary judgment must be denied even if no opposing evidentiary matter is

presented." Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 393 (8th Cir. 1986).

"Mere allegations, unsupported by specific facts or evidence beyond the nonmoving

party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas

v. Corwin, 483 F.3d 516, 526–27 (8th Cir. 2007). While the burden of demonstrating the absence

of any genuine issue of material fact rests on the moving party, the nonmoving party may not rest

on mere allegations or denials in their pleadings, but the non-moving party must set forth specific

admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods,

Inc., 285 F.3d 688, 691 (8th Cir. 2002). "Naked assertions, unsubstantiated by the record," made

in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton v.

University Healthcare Sys., L.L.C., 136 F. App'x 596 (5th Cir. 2005) (unpublished decision); see

also Simms v. McDowell, No. 4:08cv-60-M, 2009 WL 3160353, at *5 (W.D.Ky. Sept. 25, 2009)

(holding that speculation that someone lied in an affidavit is "insufficient to defeat a motion for

summary judgment."). "A properly supported motion for summary judgment is not defeated by

self-serving affidavits." Frevert v. Ford Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting

Bacon v. Hennepin Cty. Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008)). "Rather, the plaintiff must

substantiate allegations with sufficient probative evidence that would permit a finding in the

plaintiff's favor." Id. at 473–74. A plaintiff may not merely point to unsupported self-serving allegations but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995); Smith v. International Paper Co., 523 F.3d 845, 848 (8th Cir. 2008). "If the moving party supports the motion with evidence, the opposing [non-moving] party must rebut it, or the court can consider the fact undisputed." Irish v. U.S. Dept. of Justice, Civ. No. 11-2703 (MJD/JJK), 2013 WL 451314, at *2 (D. Minn. Jan. 3, 2013) (citing Fed. R. Civ. P. 56(e)(2)), adopted by, 2013 WL 452576, rev'd on other grounds, 564 Fed. App'x 259 (8th Cir. 2014).

In addition, a movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Under such circumstances, no genuine issue of fact exists because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. If the nonmoving party relies on conclusory allegations and fails to present evidence supporting a necessary element of a claim, then that claim cannot survive summary judgment. Beyer v. Firstar Bank, N.A., 447 F.3d 1106, 1108 (8th Cir. 2006).

**B. Uncontested Material Facts**

The record now before the Court, when viewed in the light most favorable to the remaining Plaintiffs as the non-moving party, provides as follows:

The Department of Corrections has a grievance procedure that incarcerated individuals may use to grieve nearly any issue concerning their conditions of confinement. (Grunseth Decl., [Docket No. 27], at ¶ 2). Pursuant to DOC Policy 303.100, the first step an incarcerated individual must take to resolve issues related to their confinement is through submitting an informal

8

resolution known as a "kite" form to the relevant facility staff. (Id.). If dissatisfied with their response, the individual may proceed up the chain of command to address their concerns prior to filing a grievance. (Id.). Thereafter, the individual may file a formal grievance using a facility grievance form within thirty (30) calendar days of when the issue being grieved most recently occurred. (Id. at ¶ 5). If the grievance is complete and meets filing requirements, it is referred to the appropriate department head to address the issue. (Id. at ¶ 7). The Warden or the Warden's designee ultimately decides and responds to the grievance, and if the inmate is dissatisfied with the response, he or she may initiate a grievance appeal to the DOC's central office. (Id.). The appeal decision is considered the DOC's final response. (Id.).

The grievance database at MCF-Faribault reveals that none of the remaining Plaintiffs filed a grievance relating to Native American religious ceremonies. (Grunseth Decl., [Docket No. 27], at ¶ 8). On November 5, 2020, August 19, 2021, September 20, 2021, and September 26, 2021, remaining Plaintiff Bonga did submit four "kite" forms to Associate Warden of Administration Laura Westphal raising the issue of allowing Native American ceremonies to continue in light of COVID-19 restrictions, as well as, the use of tobacco during these ceremonies. [Docket No. 27-1]. Remaining Plaintiff Bonga never filed a formal grievance form, however. (Grunseth Decl., [Docket No. 27], at ¶ 8).

Plaintiffs' counsel also provided "kite" forms filed by remaining Plaintiff Boettcher on October 23, 2021, and December 2, 2021, requesting access to a ceremonial pipe, drum, sage, and bowl. [Docket No. 31-3]. Remaining Plaintiff Boettcher also never filed a formal grievance form, however. (Grunseth Decl., [Docket No. 27], at ¶ 8).

Attachments to Plaintiffs' counsel's declaration provides that one former Plaintiff, Kristopher Roybal, ("former Plaintiff Roybal"), filed three "kite" forms, a grievance form, a

grievance appeal form, and received an appeal decision on April 30, 2020. (Cambronne Decl., [Docket No. 31-1]). Specifically, former Plaintiff Roybal complained that it was a substantial burden on his religious exercise for MCF-Faribault to limit the number of attendees and the frequency of sweat lodge ceremonies to the first and third Sunday of each month, rather than every Sunday. [Docket No. 31-1]. For each step in the grievance procedure, facility staff denied former Plaintiff Roybal's requests stating that the change in policy was to ensure equal access to the ceremonies and due to security concerns. (Id.).

### C. Analysis

As noted above, Defendant argues that the four remaining Plaintiffs' claims should be dismissed because they failed to each exhaust their administrative remedies as required by the Prison Litigation Reform Act.

The exhaustion of administrative remedies requirement is contained within the Prison Litigation Reform Act (hereinafter "PLRA"), which in relevant part states that "[n]o action shall be brought with respect to prisons conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"The PLRA's exhaustion requirement is mandatory." Robley v. Anderson, No. 2-cv-4199 (JRT/RLE), 2004 WL 742089, at *2 (D. Minn. Mar. 4, 2004) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "Congress intended section 1997e(a) to curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before brining suit in Federal court." Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998). Moreover, the requirement to exhaust administrative remedies applies to all forms of relief sought. Booth v. Churner, 532 U.S. 731, 741 (2001).

"The benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subject to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Hammett v. Cofield, 681 F.3d 945, 947 (8th Cir. 2012) (quotations omitted) (quoting Jones v. Bock, 549 U.S. 199, 219 (2007)). "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" Woodford v. Ngo, 548 U.S. 81, 89 (2006) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Moreover, "the PLRA exhaustion requirement" mandates not only exhaustion but "proper exhaustion." (Id.). "An exhaustion requirement protects a correctional institution's authority by compelling inmates 'to give the agency a fair and full opportunity to adjudicate their claims.'" Hammett, 681 F.3d at 947 (quoting Woodford, 548 U.S. at 90).

Pursuant to the PLRA, failure to exhaust the available administrative remedies is an affirmative defense, with the burden of proof falling on the defendant asserting such a defense, and it is not a matter of subject matter jurisdiction. Lenz v. Wade, 490 F.3d 991 993 n.2 (8th Cir. 2007) (citing Jones v. Bock, 549 U.S. 199 (2007)).

On the basis of the present record, the Department of Corrections ("DOC") has a grievance procedure that incarcerated individuals may use to grieve nearly any issue concerning their conditions of confinement. (Grunseth Decl., [Docket No. 27], at ¶ 2). The first step is an informal resolution known as a "kite" form to the relevant facility staff. (Id.). If dissatisfied with their response, the individual may proceed up the chain of command to address their concerns prior to filing a grievance. (Id.). Thereafter, the individual may file a formal grievance using a facility grievance form within thirty (30) calendar days of when the issue being grieved most recently

occurred.  (Id. at ¶ 5).  If the grievance is complete and meets filing requirements, it is referred to the appropriate department head to address the issue.  (Id. at ¶ 7).  The Warden or the Warden's designee ultimately decides and responds to the grievance, and if the inmate is dissatisfied with the response, he may initiate a grievance appeal to the DOC's central office.  (Grunseth Decl., [Docket No. 27], at ¶ 2).  The appeal decision is considered the DOC's final response.  (Id.).

The present record also reveals that, after this lawsuit was initiated, remaining Plaintiff Bonga filed four "kite" forms requesting that Native American ceremonies and the use of tobacco be allowed to continue, despite the facility's COVID-19 restrictions.  (Grunseth Decl., [Docket No. 27], at ¶ 8; [Docket No. 31-3]).  Remaining Plaintiff Boettcher similarly filed two "kite" forms requesting access to ceremonial items.  (Id.).  However, there is nothing in the record indicating that the remaining four Plaintiffs ever followed the formal grievance procedure set forth in DOC Policy No. 303.100 with respect to any of their present claims—either before or after this action was initiated.  See Booth, 532 U.S. at 738 ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained.").

The remaining Plaintiffs do not dispute that they each failed to exhaust their administrative remedies at the time this lawsuit was initiated, nor do they even assert that they attempted to pursue this procedure.  Instead, the remaining Plaintiffs argue that, because former Plaintiff Roybal did exhaust his administrative remedies relating to some Native American religious practices, their own administrative remedies should now be deemed exhausted, or in the alternative, they argue that requiring them to exhaust administrative remedies would be futile.

> 1.  *Whether the Remaining Plaintiffs' Administrative Remedies Should be Deemed Exhausted?*

The remaining Plaintiffs first argue that, although this case is admittedly not a class action, the Court should nevertheless apply the doctrine of vicarious exhaustion to deem their

administrative remedies exhausted.  (Plfs.' Mem., [Docket No. 30], at pp. 3-5).  The doctrine of vicarious exhaustion, which originally applied to class action employment discrimination lawsuits, requires that only one class member have exhausted his or her administrative remedies in a class action.  See C.P.X. through S.P.X. v. Garcia, 450 F. Supp. 3d 854, 900 (S.D.Iowa 2020).  Courts have applied the vicarious exhaustion doctrine to class action prisoner lawsuits where the PLRA was silent on which parties must exhaust their administrative remedies.  Id.; see also Chandler v. Crosby, 379 F.3d 1278, 1287 (11th Cir. 2004) (holding that a certified class of prisoner-plaintiffs satisfied the PLRA's exhaustion requirement through "vicarious exhaustion"); Gates v. Cook, 376 F.3d 323, 329-32 (5th Cir. 2004) (holding that one class member's exhaustion of administrative remedies was sufficient to satisfy PLRA's exhaustion requirement for the class of prisoners challenging conditions of confinement).  While the Eighth Circuit has not yet addressed whether the vicarious exhaustion doctrine applies in a class action prisoner lawsuit, at least one District Court in this Circuit has applied it so that only one member of the class is required to meet the PLRA's exhaustion requirement.  See C.P.X. through S.P.X., 450 F. Supp. 3d at 900.

    In support, Plaintiffs point to the Eleventh Circuit's rationale in Chandler, 379 F.3d 1278, for applying the doctrine in this case.  The Eleventh Circuit in Chandler was presented with the novel issue of applying the newly passed PLRA to the plaintiffs, who were a class of death row inmates bringing conditions of confinement claims against prison officials, to determine if they had satisfied the PLRA's administrative exhaustion requirement.  Id. at 1286.  The Eleventh Circuit determined that the plaintiffs had met the PLRA's requirement through the doctrine of vicarious exhaustion, reasoning that applying the doctrine "advances the purpose of administrative exhaustion, which . . . 'is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues.'"  Id. (citing Jones 'El v.

Berge, 172 F.Supp.2d 1128, 1133 (W.D.Wis. 2001)).  The Eleventh Circuit also reasoned that requiring all class members to exhaust their administrative remedies "'could impose an intolerable burden upon the inmate complaint review system.'"  Id. (citing Jones 'El, 172 F.Supp.2d at 1131-32).  However, the Court finds the Eleventh Circuit's rationale for applying the vicarious exhaustion doctrine to the present case unpersuasive.  Chandler involved a "class action" of death row inmates, and the Eleventh Circuit's rationale does not address extending the doctrine outside of the class action context.  Indeed, the only court in this Circuit that has applied the vicarious exhaustion doctrine did so as well in a class-action prisoner lawsuit.  See C.P.X. through S.P.X., 450 F. Supp. 3d at 901.

The remaining Plaintiffs conclusory and generally assert that class certification is not necessary because they "seek relief for Native American persons generally and not just themselves."  (Plfs.' Mem., [Docket No. 30], at p. 5).  In other words, class certification is not necessary because the injunctive relief they seek of requiring the "'Defendant to terminate [the] policy that limits and bars sweat lodge ceremonies and other related practices'" will have a broad effect for all the Native American inmates housed at MCF-Faribault.  (Id.).  However, the issue of whether to apply the vicarious exhaustion doctrine to this case does not solely turn on whether the remaining Plaintiffs are certified or treated as a class.[3]

As Defendant points out, even if the Court were inclined to sua sponte certify the remaining Plaintiffs as a class today, the doctrine of vicarious exhaustion would still be inapplicable here because former Plaintiff Roybal—the only inmate who did exhaust his administrative remedies on some issues—is no longer a party in the case.  Indeed, even in those Circuits that recognized vicarious exhaustion in class action cases, at least one active class member had successfully

---

[3] The remaining Plaintiffs have at no time sought certification of a class under Fed. R. Civ. P. 23.

exhausted, whereas here, none of the remaining Plaintiffs have exhausted.  See Chandler, 379 F.2d at 1287; Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004); Jones v. Berge, 172 F. Supp. 2d 1128, 1133 (W.D. Wis. 2001); see also C.P.X. through S.P.X., 450 F. Supp. 3d at 901 (applying vicarious exhaustion doctrine and finding that the plaintiff-class had exhausted their administrative remedies even though the only class member who did exhaust was dismissed after class certification) (emphasis added).

Because this case is clearly not a "class action" and because the only individual who did exhaust is no longer a party in this action, the Court finds that the doctrine of vicarious exhaustion has no application here.  See Curry v. Scott, 249 F.3d 493, 503-04 (6th Cir. 2001) (holding that, while some of the inmates substantially complied with the administrative exhaustion requirement of the PLRA, others did not and none of the plaintiffs' legal theories excuse them from the exhaustion requirements of § 1997e); McGoldrick v. Werholtz, 185 Fed. Appx. 741, 744 (10th Cir. 2006) (refusing to apply the vicarious exhaustion rule because the case was not certified a class action, and it could not be certified as one because all plaintiffs were proceeding pro se).

The remaining Plaintiffs next argue that the Court should nevertheless deem their administrative remedies exhausted because MCF-Faribault was de facto placed on notice of all issues relating to Native American religious ceremonies through former Plaintiff Roybal's exhaustion.  However, because this case is not a class action, former Plaintiff Roybal's personal grievances cannot satisfy the exhaustion requirement for the remaining Plaintiffs.  See Austin v. Cotton, 2012 WL 3135318, at *1 (W.D. Ark. Aug. 1, 2012) (rejecting the plaintiff's argument that the other inmates' grievances about officers' use of excessive force against the plaintiff should have been sufficient to exhaust the plaintiff's administrative remedies); see e.g., Wallace v. Baldwin, 2021 WL 916747, at *4 (S.D. Ill. Mar. 10, 2021) (holding that other inmates' grievances

cannot satisfy the PLRA's exhaustion requirement when the plaintiff himself has not pursued his administrative remedies); Gibert v. S.C. Dep't of Corr., 2019 WL 1302838, at *4 (D.S.C. Jan. 25, 2019) (same); Worthen v. Oklahoma Dep't of Corr., 2007 WL 4563644, at *1 (W.D.Okla. Dec. 20, 2007) (holding one prisoner's exhaustion of administrative remedies is not sufficient to exhaust the same or similar claims filed by other prisoners); Elliot v. Jowers, 2002 WL 32714551, at *1 (N.D.Tex. Sept. 16, 2002) (holding that grievances of other inmates cannot satisfy the exhaustion requirement for plaintiff's claims).

Further, to the extent that some of the remaining Plaintiffs allege that their own "kite" forms (which are not grievances) alerted MCF-Faribault as to the nature of the wrong relating to Native American ceremonies, this argument also fails. While there are courts that have held "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought," they have done so in the context of determining whether a plaintiff has properly exhausted their administrative remedies—not in the context of whether a plaintiff failed to exhaust altogether. See Muhammad v. Mayfield, 933 F.3d 993, 1003 (8th Cir. 2019) (citing Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). Indeed, the Supreme Court has held that prisoners must "properly" exhaust administrative remedies, which entails "compliance with an agency's deadlines and other critical procedural rules," Woodford, 548 U.S. at 90-91, and that "a court may not excuse an inmate's failure to exhaust administrative remedies prior to bringing suit under the PLRA, even to take [special] circumstances into account." Ross, 578 U.S. at 639.

Here, the record before the Court provides that, not only did remaining Plaintiffs Bonga and Boettcher fail to follow to conclusion the formal grievance procedure set forth in DOC Policy No. 303.100 with respect to any of their individual claims, but their respective "kite" forms were filed after this lawsuit was commenced. See Roth v. Larson, 06-CV-4574 (MJD/JSM), 2008 WL

16

4527831 at *16 (D. Minn., Sept. 30, 2008) (granting summary judgment, based upon a failure to exhaust, notwithstanding the plaintiff's submission of numerous kites, given the plaintiff's failure to file a formal grievance, and appeal); see also Woodford, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").

Therefore, to the extent the remaining Plaintiffs contend that their administrative remedies should be deemed vicariously exhausted, the Court finds they cannot.

   2.   *Whether It Would be Futile for the Remaining Plaintiffs to Exhaust Their Administrative Remedies?*

Alternatively, the remaining Plaintiffs argue that requiring them to each exhaust their administrative remedies would be futile, and in support, first assert that doing so would essentially require them to file "four additional, identical kites, grievances, and appeals." (Plfs' Mem., [Docket No. 30], at p. 6). Defendant asserts that requiring the remaining Plaintiffs to each exhaust their individual administrative remedies would not necessarily result in quadruplicate, identical grievances because there are differences between former Plaintiff Roybal's "kite" forms and Plaintiff Bonga's "kite" forms. The Court agrees with Defendant.

On the record now before the Court, while they all raise an issue relating in some respect to Native American ceremonies, the relief sought by the four remaining Plaintiffs' various "kite" forms are different than the relief sought by former Plaintiff Roybal. Specifically, former Plaintiff Roybal's grievances and subsequent appeals dealt with the restrictions on the number of inmates allowed to attend sweat lodge ceremonies, and the frequency of sweat lodge ceremonies (from every Sunday to every other Sunday). [Docket No. 31-3]. Defendant ultimately denied former Plaintiff Roybal's grievance appeal, citing security concerns. (Id.). Whereas remaining Plaintiffs

Bonga and Boettcher's "kite" forms took issue with the complete ban on sweat lodge ceremonies and tobacco-use following implementation of the facility's COVID-19 restrictions and requested access to ceremonial items. [Docket Nos. 27-1]. Facility staff responded to remaining Plaintiff Bonga's "kite" forms suggesting "kinnikinnick" as an alternative to tobacco; and he was informed that his concerns were passed on to "Safia Khan, our chief of staff [and] interim Tribal Liasion." [Docket No. 27-1]. As for Plaintiff Boettcher's "kite" forms, a facility staff member responded that "one person singing while social distancing is [the] only option"; that the ceremonial items requested "would need to be provided for the other 11+ cohorts also"; and that the facility "is working on reopening spiritual care services." [Docket No. 31-3].

Therefore, to the extent the remaining Plaintiffs argue that directing them to each exhaust their administrative remedies would result in four identical grievances and appeals rendering exhaustion futile, there is no support in the present record for this assertion. The responses and issues raised by former Plaintiff Roybal's grievances and appeals are different than the responses and issues raised by and among the remaining Plaintiffs' "kite" forms. Further, the remaining Plaintiffs fail to present any evidence that the facility has already considered and denied any grievance and appeal requesting that COVID-19 restrictions be immediately lifted on all religious ceremonies. Indeed, the remaining Plaintiffs themselves concede that they never followed the formal grievance procedure set forth in DOC Policy No. 303.100 to grieve and appeal the pandemic ban on Native American ceremonies.

As provided above, "[t]he PLRA's exhaustion requirement is mandatory," Robley, 2004 WL 742089, at *2, and the Supreme Court in Ross, 136 S. Ct. 1850, clarified that there are no "judge-made" exceptions, such as good cause, to the PLRA's exhaustion requirement. Id. at 1857. Instead, a prisoner must exhaust all "available" remedies, which the Court narrowly defined as all

remedies that are "capable of use." Id. at 1858.  The Supreme Court then set forth three limited circumstances when an administrative remedy is deemed "unavailable," which "will not often arise." Id. at 1859.   Those situations are: 1) when the procedure "operates as a simple dead end—with officer unable or consistently unwilling to provide any relief to aggrieved inmates;" 2) when an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use;" or 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation."  Id. at 1859-60.

It appears that the four remaining Plaintiffs seek to rely on the first exception in Ross to assert that it would be futile for the remaining Plaintiffs to exhaust their administrative remedies because the facility's grievance procedure "operates as a simple dead end."  In other words, having denied former Plaintiff Roybal a remedy back in April 2020, they simply assume the facility would similarly deny any subsequent grievances and appeals filed by the remaining Plaintiffs.  However, this argument too is unavailing.  To constitute an "available" remedy, a process requires only "the possibility of some relief." Ross, 578 U.S. at 643.

Here, as discussed, supra, the remaining Plaintiffs' issues differ from those raised pre-pandemic by former Plaintiff Roybal—the remaining Plaintiffs seeks to have the COVID-19 restriction lifted on Native American ceremonies, while former Plaintiff Roybal was concerned with attending weekly smoke lodge ceremonies with no limitation on the number of attendees.  As such, the remaining Plaintiffs fail to provide any evidence that a grievance and appeal asserting that their individual religious liberties have been violated by a ceremonial ban would not have any "possibility of some relief," such as a change in MCF-Faribault's COVID-19 restrictions.

However, even if the grievance procedures might not lead to a change in the challenged prison's policy, this is still not enough within the meaning of Ross to find that the grievance

19

procedure is a "dead end"—the remaining Plaintiffs do not argue that they were unable to file a grievance, were prevented from filing a grievance, or that they did not receive a response to their kites. [4]  See Tyler v. Kelley, 17-CV-00239 (JLH/JTK), 2018 WL 1528784, at *3 (E.D. Ark. Mar. 2, 2018), report and recommendation adopted, 17-CV-00239 (JLH/J TK), 2018 WL 1526017 (E.D. Ark. Mar. 28, 2018) (rejecting the plaintiff's argument that a remedy was unavailable to him because the prison's incoming mail policy could be changed through the grievance process).

Therefore, because the remaining Plaintiffs acknowledge that their remedies were not exhausted at either the time the original pro se Complaint was filed on May 18, 2020, or at the time the Amended Complaint was filed on September 7, 2021, through pro bono counsel, the Court finds that possible remedies were available to the remaining Plaintiffs, within the meaning of Ross.

Accordingly, upon viewing the evidence in a light most favorable to the remaining Plaintiffs, the Court finds that the remaining Plaintiffs each failed to exhaust their individual administrative remedies prior to the filing of this action, and there are no genuine issues of material fact. Defendant's Motion for Summary Judgment, [Docket No. 25], should be granted and the remaining Plaintiffs' Amended Complaint, [Docket No. 19], should be dismissed without prejudice for failure to exhaust administrative remedies. [5]

---

[4] The Court also notes that the remaining Plaintiffs' subjective belief that there is no point in pursuing administrative remedies is irrelevant. See Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000) (holding that § 1997e(a) does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are "available."); Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir. 2002).

[5] The Recommendation to dismiss the Amended Complaint for failure to exhaust administrative remedies should in no way be construed by Defendant as a comment on the merits of the remaining Plaintiffs' underlying claims.

### D.  Conclusion

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendant's Motion for Summary Judgment, [Docket No. 25], be **GRANTED**, as set forth above; and

2. Plaintiffs Dario Bonga, Wesley Tibbetts, Robert Boettcher, and Arthur Vanwert's claims as alleged against Defendant Beltz be **DISMISSED**, without prejudice.


Dated: May 6, 2022                               s/Leo I. Brisbois
                                                 Hon. Leo I. Brisbois
                                                 United States Magistrate Judge


### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).